**STATE of Missouri, Respondent,**

**v.**

**Loyd FENTON, Appellant.**

**No. 9466.**

Missouri Court of Appeals,
Springfield District.

Sept. 11, 1973.

John C. Danforth, Atty. Gen., Mark M. Mittleman, Karen I. Harper, Asst. Attys. Gen., Jefferson City, for respondent.

Edward J. Murphy, Butler, for appellant.

BILLINGS, Judge.

Loyd Fenton was convicted by a jury of felonious stealing [ §§ 560.156, 560.161, RSMo 1969, V.A.M.S.] and since the jury could not agree on the matter of punishment the court sentenced him to three years imprisonment. Because of prejudicial error committed in the presentation of the state's case we reverse and remand for a new trial.

Defendant's prosecution arose out of the theft of a tractor-operated posthole digger. The state's evidence was that Jack Hendricks, Gary Keith, and the defendant stole the digger from the owner's field and sold it, dividing the money received from its sale. The three men were prosecuted separately and prior to defendant's trial Hendricks had plead guilty to felonious stealing and Keith had entered a plea of guilty to misdemeanor stealing.[1]

During the course of the prosecuting attorney's opening statement to the jury he said: "The State alleges that sometime in the early part of January the defendant here, with two other parties, loaded this [the digger] up and sold it and they got the money. The State is in a very unusual position. I am going to call the *other two parties* . . . . *The State will be in the position of calling two witnesses who were the other two parties involved, which I, as prosecutor, then prosecuted them on. They will testify that they plead guilty to this charge.* (Our emphasis)

Defendant's attorney immediately objected and requested a mistrial and discharge of the jury on the grounds that the prosecutor's statement" at this time is highly prejudicial to this defendant, as to what other persons did and to put such a thing in front of the jury is highly improper and prejudicial." The court thereupon stated: "I assume when they are on the stand you will ask that same question. I don't know that it is particularly prejudicial." Defendant's attorney replied: "You can't assume I am going to ask any questions, Judge." The court said: "That's right. I will overrule the objection."

---

1. Hendricks had been sentenced to two years imprisonment and granted a judicial parole.

The disposition of Keith's guilty plea is not reflected in the record.

Following the testimony of the owner of the digger as to its theft and a witness as to its value, the state called Hendricks and Keith to testify. After a few preliminary questions the state, by leading questions, elicited from Hendricks that he had been prosecuted by his examiner for stealing the digger and that the witness had entered a plea of guilty. Hendricks then testified that he, Keith and defendant had taken the digger from the field where it was located, disassembled it, and thereafter sold it and shared the proceeds. Keith's testimony on direct examination as to the theft was similar to Hendricks and near the close of his examination by the state, the prosecutor, again by leading questions, developed from the witness that he had been arrested on "this charge" and entered a plea of guilty. During the State's argument of the case the prosecutor told the jury that "The State showed by two witnesses who admitted they had plead guilty that they were with [defendant], they used his pickup truck." The only evidence linking defendant to the theft came from Hendricks and Keith. Defendant did not offer any evidence.

Defendant's principal point in this appeal is that the disclosure by the prosecuting attorney in his opening statement to the jury that defendant's accomplices had pleaded guilty to the theft of the digger prejudiced the jury against him and deprived him of a fair and impartial trial. The defendant argues that permitting the prosecution to tell the jury in an opening statement that another defendant, or accomplice, had chosen to plead guilty to the charge "firmly implants in the jury's mind, with the court's obvious approval, a guilt by association which does havoc to all of the basic principles of justice, primarily the presumption of innocence of the defendant who is on trial." The defendant also says that in view of the prosecuting attorney's statement and the court's ruling he was forced into the position of having to permit such evidence to come before the jury by way of testimony in order to show some explanation [parole for Hendricks and misdemeanor charge against Keith] why they entered pleas of guilty.

The state, in opposition to defendant's claim of error, points out that the trial court has considerable discretion in determining whether opening statement remarks are so prejudicial as to require a mistrial or other relief and this discretion is only reviewable for manifest abuse. The state argues that the prosecutor's reference to the guilty pleas of Hendricks and Keith was made in the context of his explanation of the testimony which he would offer to prove the state's case; that the court's comment, following defendant's objection and request for a mistrial, may have been addressed to the prosecuting attorney rather than defendant's attorney because "It was the prosecution which initially questioned both witnesses . . . about their guilty pleas arising out of the theft of [the] digger." The state concludes no prejudice arose from the prosecutor's remarks made in his opening statement because the guilty pleas he referred to in his statement were subsequently testified to by Hendricks and Keith.

 The prosecuting attorney in a criminal prosecution has the duty to "state the case" [ § 546.070(1), RSMo 1969, V.A.M.S.] and in general advise the jury as well as the defendant of the *facts* relied upon for a conviction. State v. McAllister, 468 S.W.2d 27, 29 (Mo.1971); State v. Deppe, 286 S.W.2d 776, 779 (Mo.1956). "As a general rule the opening statement 'should be brief and general, rather than detailed, and should be confined to statements *based on facts which can be proved and should not include facts which are plainly inadmissible.*' 23 C.J.S. Criminal Law § 1085." State v. Feger, 340 S.W.2d 716 at 724 (Mo.1960). (emphasis added) This rule is consistent with the duty that a prosecuting attorney is charged with to see that a person on trial is afforded a fair trial. 63 Am.Jur.2d, Prosecuting Attorneys, § 27 (1972).

■ We recognize that the scope and extent of a prosecutor's opening statement is largely within the discretion of the trial court, and of necessity, this discretion is a broad one. State v. Feger, supra. The same is true in connection with the declaration of a mistrial by the trial judge. State v. Dennison, 428 S.W.2d 573 (Mo. 1968). However, as the state in the instant case recognizes, in both situations the lower court's discretion is reviewable for manifest abuse resulting in prejudice to a defendant in a criminal case.

■ The general rule is that where two persons have been jointly indicted for the same offense, but are separately tried, a judgment of conviction against one of them is not competent on the trial of the other, inasmuch as such conviction is no evidence either of joint action or the guilt of the accused. The same rule is applicable where two persons are jointly charged and one pleads guilty. And, equally applicable where two or more are separately charged for the same crime. 22A C.J.S. Criminal Law § 784 (1961). In this state it is deemed error, usually reversible error, to show in evidence or tell the jury that a jointly accused defendant has been convicted or plead guilty. State v. Johnson, 456 S.W.2d 1 (Mo.1970); State v. Aubuchon, 381 S.W.2d 807 (Mo.1964); State v. Mull, 318 Mo. 647, 300 S.W. 511 (1927); State v. Castino, 264 S.W.2d 372 (Mo.1954); State v. Stetson, 222 S.W. 425 (Mo.1920). Thus, a defendant is entitled to be tried on his own without having his guilt prejudged by what has happened to another, it being considered an elementary principle of justice that one man shall not be affected by another's act or admission, to which he is a stranger. State v. Aubuchon, supra. Kirby v. United States, 174 U.S. 47, 19 S.Ct. 574, 43 L.Ed. 890 (1899). Also see Annotations, 48 A.L.R.2d 1004 (1956), 48 A.L. R.2d 1016 (1956), wherein it is pointed out that the prejudicial effect of a prosecutor's remarks in his opening statement to the jury that another defendant has been convicted or pleaded guilty is governed by the same rules and produce the same general result as when the fact of the guilty plea or conviction of another is brought out during the trial.

■ We are of the opinion that in this case the prosecuting attorney's disclosure during his opening statement to the jury that the defendant's accomplices had entered pleas of guilty to the theft of the digger injected the venom of prejudice into the defendant's right to a fair and impartial trial and, under the circumstances, the only antidote available was for the trial court to declare a mistrial pursuant to the defendant's request. We are aware of and familiar with such cases as State v. Hunt, 352 S.W.2d 57 (Mo.App.1961), and State v. Arthur, 57 S.W.2d 1061 (Mo.1933), where improper remarks by prosecutors were "cured" by objections being sustained and the jury being instructed to disregard the remarks. As the cases collected in the Annotations, supra, demonstrate the prejudicial effect of a prosecutor's remarks in an opening statement turns on the particular factual situation presented and the curative action taken. Here, we find ourselves in agreement with the statement of the court in Quig v. United States, 33 F.2d 820 (3rd Cir.1929), where the prosecuting attorney had told the jury in his opening statement that a co-defendant had already entered a plea of guilty, viz (1.c. 822); "These statements made by the district attorney in his opening to the jury . . . very naturally took serious, and, perhaps, permanent lodgment in the minds of the jury. They went far beyond the rights possessed by government counsel in outlining its case to the jury; contained statements wholly incompetent, were seriously prejudicial to defendant's case, and should not have been admitted."

We are also reminded by Sherwood, J., in State v. Jackson, 95 Mo. 623, 8 S.W. 749 (1888), in considering the ability of a jury to disregard an improper opening statement remark, that ". . . [A]ll those who have ever engaged in active practice know how difficult it is for the court, by

some such simple reprimand, to eradicate from the memories of jurors the evil of such illegitimate statements. Like the tares mentioned in Holy Writ, which the enemy sowed while men slept, they become as ineradicable as the good wheat of legitimate testimony among which their mischief-bearing seeds are cast." Id. at 653, 8 S.W. at 762.[2]

In this case the trial court compounded the damaging and prejudicial effect of the prosecutor's wholly improper and incompetent statements as to the pleas of guilty by Hendricks and Keith by overruling defendant's timely and specific objection and request for a mistrial. The implications and inferences arising from the prosecutor's statement, the objection, the judge's comment and ruling, are obvious and in our view cast the taint of prejudice on defendant's right to a fair and impartial trial.

█ The State seeks to overcome the charge of prejudice by pointing out that the prosecutor did in fact prove by Hendricks and Keith that they had pleaded guilty to "this charge" and defendant voiced no objection. First of all if the state was seeking to prove the pleas as substantive evidence of the defendant's guilt this would be, under the decisions hereinbefore cited, reversible error. Secondly, it presents the situation where the state is placed in the position of impeaching its own witnesses by proving up their conviction of crime. And, as before noted, the trial court by its earlier ruling had adopted a position from which there was no retreat. Suppose the defendant had objected to this direct testimony and the court had sustained the objection. This would not have eliminated the impact of the prosecutor's opening statement remarks. Assume the court sustained the objection and also instructed the jury to disregard the question asked. Here again,

this would not have eliminated the initial prejudice of the opening statement. In a somewhat similiar situation in Ward v. Commonwealth, 205 Va. 564, 138 S.E.2d 293 (1964) the court said at 300: "In the instant case we have a situation where improper and irrelevant information was transmitted to the jury by the Commonwealth's attorney on two separate occasions, once during the course of the trial and again in his closing argument. The subject matter was the same on both occasions and motions for mistrial were promptly made and overruled. On the first occasion the court did not instruct the jury on the impropriety of the information; on the second occasion the jury was so instructed. In this instance, the first error was compounded by the second and it would be hard to blot the information from the minds of a jury. We feel that what was said in Smith v. State, 133 Tex.C.R. R. 382, 111 S.W.2d 275 is appropriate here: 'However, we can scarcely conceive of a more hurtful question than to ask if the witness, who was engaged in the commission of the same offense for which appellant was charged, had not already been convicted for such offense and was serving a term in the penitentiary therefor. The appellant's attorneys were forced to object thereto, and such objection could only lead the jury to conclude that such facts were true, and the necessary implications had to follow. We think the court's prompt instructions could not possibly eliminate these conclusions and implications from the jury's mind.' "

What we have just said likewise is applicable to the prosecutor's argument where he again called the jury's attention to the guilty pleas of Hendricks and Keith. The prejudice conceived in the opening statement could not have been aborted at this stage of the trial and, although we would have no hesitancy in this case to invoke

2. "The written word, unpublished, can be destroyed, but the spoken word can never be recalled." Horace, Ars. Poetica (8 B.C.) ; "A word once spoken revoked cannot be." Alexander Barclay, Shyp of Folys, p. 108 (1509).

the provisions of the plain error rule, Rule 27.20(c), V.A.M.R., we do not deem this necessary.

Because we have concluded the judgment must be reversed and remanded for a new trial we do not consider defendant's other points alleging error. As to any other alleged errors, the state may consider the brief filed here and the objections made, and govern itself accordingly. State v. Aubuchon, 381 S.W.2d 807 (Mo.1964).

Accordingly, the judgment is reversed and the cause remanded.

TITUS, C. J., and STONE and HOGAN, JJ., concur.